The next case this morning is 23-2145. My apologies to the defendant if I put your name, United States v. Villela, and counsel for the appellant if you'd make your appearance and proceed. Good morning, may it please the court. My name is Ramon Soto representing the appellant Vicente Villela. This case arises from the District Court's revocation of Mr. Villela's supervised release and his imposition of a 36-month consecutive sentence in two criminal cases. We raised three arguments. The District Court plainly sentencing enhancements under Section 3553A2A, the retribution factor. The second argument is that the District Court abused its discretion by failing to justify the upward variance. And three, the District Court abused its discretion by failing to notify defense counsel of the upward variance, which constitutes procedural error. I'm sorry. Starting first with your plain error argument with regard to your first claim, we jump right to the third prong, don't we, because the government has conceded that we have error and that it's plain? That's correct, Your Honor. The government has conceded that issue. And so what the argument that the government raises is that Mr. Villela's substantial rights have not been violated. And we have a situation where Mr. Villela's behavior on supervised release historically has not been good. Would you concede that? Yes, Your Honor. And I think we concede those facts, and I think it bolsters the issue of Mr. Villela's rights being violated. And that is because the District Court relies on the retribution factor due to Mr. Villela's history and failure to comply with his supervised release and continuing to allegedly commit these crimes. I don't follow the question of the prejudice. I mean, when you read what the trial court did in this, you can almost see the smoke coming out of her ears. Exactly. I'm not following your prejudice argument. That's your burden, and I'm not following it yet. Yes. So what the section 3583E says is that the court cannot rely on section 3553A28, the retribution factor. And so here, where the court blatantly erred and violated Mr. Villela's rights is because it said, I have considered all the factors. Again and again she said that. And she stated, I've made myself clear. I consider all the factors, which means that she has considered the retribution factor. Why isn't this just like Booker, where this is a formulaic reference to the retribution factor, and otherwise the court applied the appropriate factors? I mean, it seems to me this is a copycat of Booker. I don't see why there was any sort of harm or reliance for that matter. Yes. So that's where we distinguish Booker, Cordray, and Penn. So what we say is, in those cases, the district court said that I'm not relying on the retribution factor, or it said I'm only relying on the factors that are clearly stated in 3583E. Here we don't have that. Here the district court judge said, I am relying on all the factors. And when counsel at the level below said, well, can we ask for clarification? The court said, I've made myself clear. I've said 3553A2A. And so that's where the error has been committed, and that is where Mr. Villela's rights have been violated. It did not specifically say 2A, right? It said, it is general language about considering all the factors. It didn't mention, well, I mean, if you're talking about this passage where it said, all the factors A1 through 7, is that what you're talking about? Yes. Yes, Your Honor. That's correct. That's exactly what I'm referring to. And that includes A2A. Yes. But to some extent, the court is allowed to consider history and characteristics of the defendant, right? That's correct. The court can do that. So my question, I mean, the court does say respect for the law and there have to be consequences, which you could categorize as retribution. But there is also, it seems to me, an overlap of what it means to look at the history and characteristics of the defendant, where you have a defendant who has, time and again, not done very well on supervised release. The court can look at that, right? That's correct, Your Honor. And again, that's where the distinction is, is that other district courts have said, but I know I can rely on the retribution factor, or I know that I can rely on these factors. Here, we don't have that. And I don't mean to sound like a broken record, but that's the problem here, is that the district court, to say, I am considering all the factors, and doesn't make an acknowledgment that she cannot consider the retribution. And that's why we have plain error. But that doesn't answer the question, is if in the absence of that, the court, district court, whether there's a reasonable possibility the district court would have imposed a lesser sentence, if it hadn't considered the retribution. Right. And there, what the standard is saying is, there's a reasonable probability that she wouldn't have given the sentence that she did. What we're saying is that, here, the record reflects that she took into consideration the retribution factor, because of all the characteristics, all the things that have gone wrong, his probation violations, his criminal history. And so, what is happening is that the district court doesn't make an acknowledgment that she cannot consider the retribution factor. I understood, but let me play out this for you. If you have a situation in which the court says, as it did, that references the retribution factor, if the same facts that would support the other permissible considerations of 3553A are implicated here, the same facts that could also have played into the retribution factor, then why would there be a reasonable probability of a lesser sentence? And specifically, given the defendant's track record on supervised release, things like, you know, lack of commitment to rehabilitation, his, you know, accepting responsibility for his actions, all of these things that do play into whether there's been a breach of trust by a supervisee, why, even if they also could implicate the retribution factor, why would, you know, why does that lead us to a reasonable probability of a lesser sentence? Yes, and I think what the factors are telling district courts to do is to acknowledge that you can't, you know, punish people or retribute against them. And so, once you have that in your mind, then it is very likely that you won't do an uproar variance of, you know, up to 36 months. Well, as a matter of law, I get that point, but what I'm trying to understand is, and help me with the response on this, is if the facts, the underlying facts here, do you accept the fact that they implicate, that they correspond to permissible factors under the, I mean, under 3553A? Yes, Your Honor, and it's, but again, yes, Your Honor, we agree with that. The issue here, and it's been, it's been, it's a clear inference within Booker, Cordray, and Penn. As long as the district court acknowledges that it did not consider the retribution factor, then that's fine. But, but see, that goes to the question of whether, we know there's error. We know the court shouldn't have mentioned it, shouldn't have said that, you know, that it's at play in its analysis. But if fact A, B, C, D would, you know, would be prime territory for the court to exercise retribution against the defendant, but A, B, C, D also correspond and map onto permissible sentencing factors, how can you get a reasonable probability that actually all the court did was rely on A in sentencing the defendant? I mean, that's what would, that's what you would need to have as an analysis, right? Not, not, not, not, not necessarily. So what, what is going on here is that if there's a reasonable probability that the court wouldn't have sentenced Mr. Viola the way it did, then it is better to acknowledge that, you know, the district court error and Mr. Viola's rights were violated because of, of what is shown in the record, that there is an upward variance. Let me stop you right there, because in my reading of this record, and I'm going back and you look at Booker, it says, and I'm going to read it again, it says, it seriously affects the defendant's substantial rights when the defendant demonstrates that there is a reasonable probability that but for the error claimed, the result of the proceedings would have been different. Now, the way I read what the district court did to your client is not going to change in 100 years. I mean, I don't see where you've convinced me that there's going to be a change in what the district court was saying and all that she said in regards to this matter. Yes, Your Honor. And actually, I remember now that the record does say, you know, that this court just says, maybe later on down the line, we'll consider if you can enter the REAL program, the reentry through integrated opportunities program. Maybe down the line, you know, I'm paraphrasing here, but she does acknowledge that. She acknowledges maybe once you've completed a bit of your sentence, maybe you can consider and see if you enter the REAL program. So here, the court acknowledges in the record that it could have been different. So you're saying we're to the point where down the line? Yeah. Yes, Your Honor. Well, it could have been different so dramatically that the court would have given them the REAL program to begin with? Is that what you're saying? That's what the record reflects, is that if the court here considered a standard that the reasonable probability that the sentence would have been different, it's shown in the record by her saying, maybe down the line, you could have entered the REAL program. She also says, I don't want to waste a spot in that program by giving it to you because you just don't do very well on supervised release. And I see I have three minutes left, and I would like to reserve at least two minutes for rebuttal. But what it's shown is that, I think the record definitely shows that the sentence could have been different if she was made aware that the retribution factor was not something that she could have considered. And the district court, by relying on all the factors, decided not to allow him to enter the REAL program. There's a reasonable probability that he could have entered the REAL program had she acknowledged that she couldn't rely on 35-5382A. I have 15 seconds left. If there are any other questions, I would like to reserve the remaining two minutes for rebuttal. You can reserve your time if there aren't any more questions. Thank you. Good morning, Your Honors. May it please the Court. My name is Amal Keeney, representing the United States. And I'd like to address first the argument that Mr. Soto made about the district court not expressing, expressly stating it was aware that it could not apply the prohibited factor. And he also argued that very vigorously in his reply brief. It's true, the district court did not expressly state that. But if you look at the government, the district court was informed that about those, the proper factors it could look at. And that's in the government's sentencing memorandum. The government specifically lists the statutory sections of 3553A that are relevant at a revocation proceeding. And you can find that at Volume 1 of the Supplemental Appendix at 52. And then... Page 52. 52. Yes, Your Honor. And that's the volume of the Supplemental Appendix that we filed, the first volume of that. But you concede that given what the court actually said, that the court indicated that it included retribution as one of the factors it relied upon, thus being error that was plain. It's error for it to mention that as a factor in revocation proceeding. But I'd also like to point out that where it explicitly mentioned that factor at page 79, it's talking about the decision about whether to allow him to defend Mr. Villela to enter the Rio program. At that point, it's not yet saying this, and this is the sentence I'm going to impose. So I did not understand Mr. Villela in his briefing to be arguing for another chance to pursue the court to enter the Rio program. The court later talks about there have to be consequences and respect for the law and other things that we typically have associated with retribution. Well, the promotion of respect for the law, well, it only mentioned it that one time, specifically. But it does mention consequences, things like that. You're correct. It mentions a number of other factors that you could argue are relevant to promotion of respect for the law or retribution. Let me ask you what we do with cordery. There we said basically the court rattled off three things it relied on, one of which was impermissible. And we said there's no way for us to know what the court would have done in the absence of relying on the impermissible factor. So that's enough for us to vacate and remand for resentencing. Is that what we need to do here under that decision? No, ma'am. I would distinguish cordery in the same way that this court distinguished it in Booker and in Kratz. So in cordery, the improper factor mentioned was rehabilitation. And there the district court said, I have to give you a sentence of at least 56 months in order for you to receive rehabilitation services when you're incarcerated. That's what she told the defendant. So there what this court said in cordery was that the district court here specifically tied the prohibited factor into the amount of time to which the court sentenced the defendant. And therefore that's a reason we don't know what the court would have done without that. Here we don't have anything like that. Going back to the factors that you asked me about, Judge McHugh, which are relevant to possibly relevant to retribution. They're also relevant to a number of the other proper considerations that a court may consider under 3553A. And what this court said in Booker is, when it's talking about the third prong of plain error, I think this court made that point then. It said, look, yes, the court was talking about some things and the defendant is arguing that they were retributive in tone. But they are the sorts of things that a court may discuss when discussing the 3553A factors that are relevant. And that's what I want to play out for a second. Some of those factors, in fact, at least appear to and arguably implicate permissible sentencing factors. And at least I even think I understood your opposing counsel to agree with that. Well, if you have a situation where the court says, you know, in its sort of statement that, yes, I can consider also the prohibited factor, but then also in its analysis identifies factors that would implicate permissible factors, I guess what I'm getting at is the reasonable probability standard and how it wraps around such a situation. Wouldn't the defendant, since it is his burden, have to do something that shows us that the balance was tilted on the prohibited factor? For example, in the Caudry case that you alluded to, the notion of wrapping around the sentence given. So if you have an equipoise, a situation where here are the factors, those factors could apply to the prohibited factor or apply to a number of permissible factors, that's where we are. How do we get to reasonable probability that the sentence would have been lesser in such a situation? I think what the court did in Booker and didn't explicitly say this, but when it's analyzing the third prong, it's acknowledging, yes, the court mentioned the improper factor, but I think what the court does is it looks at, is there really any possibility, likelihood, that our confidence undermined that the district court would reach the same result if it had not mentioned that one other factor? And I don't know how to explain it other than that. I think that if you have the Caudry situation, then that is a situation where the defendant has carried his burden. I'm sorry, go ahead, Judge McHugh. Well, in Booker, there were a couple of differences. One is that the court had earlier stated that it understood it couldn't consider the impermissible factor. And then it goes through a lengthy explanation of all the permissible factors and just makes a single mention of the impermissible. So looking at the totality of the analysis that the district court provided, I think the Booker court was in a good position to say the court knew it couldn't consider that, and there's enough here to suggest it didn't give it any weight. We don't quite have that here. We don't ever have the court acknowledging it can't consider retribution. And, in fact, we have the court referring to things associated with retribution. Right. I acknowledge that, that the district court didn't say, I can't acknowledge that. All I can say is the district court was informed of it. But what else I can say is that if you look at pages 78 and 79, and it's on the top of page 79 of the defense appendix is what I'm referring to, that's where the district court explicitly mentions the prohibited factor. That's when the district court is discussing, am I going to allow you to go into the REIA program? At the end of page 79, the district court then says, okay, I'm not allowing you to go, I'm not holding this in advance, now I'm going to sentence you. And in that discussion, the district court makes another passing reference to all the 3553A factors, but then she's only talking about factors that are permissible factors. And I'll try again to try to get an answer to this question. It's probably my failing that I didn't. But I guess what I'm trying to understand is, yes, the court goes on to talk about permissible factors or facts that implicate permissible factors. Well, some of those facts also could implicate retribution. And so I guess what I'm saying is if you have a record which shows facts that could implicate either, who wins under plain error on the effect on substantial rights in that situation? What needs to be shown by the defendants that say, well, you know, the court actually didn't use those factors in a permissible way, those facts, didn't use them in a permissible way, it used them for the impermissible purpose. If there is a jump ball in that situation where it's not clear, who wins? If there's a jump ball, I think the government wins, because it's the defendant's burden to make it not a jump ball. Let me ask you this. Yes, sir. Were you trial counsel below? I was not, Your Honor. Well, we don't usually shoot the messenger bin from that standpoint, because it seems to me that from the government's standpoint, where this issue comes up, and it is a very important issue, somebody needs to step forward and tell the court, wait a minute, we've got a problem. It's kind of like putting the paste back into the tube. Once you say you rely on that factor, it becomes in plain error if something else doesn't happen under our, as I read our case law. Booker may or may not say this, but I'm kind of where Judge Holmes is. If it comes out both ways, and you can read what the trial court said here, and you can read who's the burden on, and you're claiming, okay, if it comes out a jump ball, then you automatically win. And I'm not convinced of that yet, that you automatically win. So how do you defend against his burden? Because he's put it forward very simply and very plain. Right. I would say that still under the acknowledging that the district court did not specifically acknowledge that she was not able to consider this factor, I would still rely on the extent and the number of violations and their quality, and it wasn't just, I think what really disturbed the district court here was not simply a failure to comply with these conditions. Because a lot of defendants, they may have, and this is what the government pointed out too, that some defendants have issues which make it more difficult for them to comply. They have addiction and poverty, or they may not have access to public adequate transportation, and all kinds of things. But here you had a defendant who was telling his probation officer, get the marshals. I'm not complying. I'm not going to do this. I'd rather be in prison. But he apologized later, didn't he? He apologized once, yeah. This was a lengthy, yeah, he apologized on one occasion, that's sure. Let me understand this. What role does the sentencing memo play in this? I mean, in most instances, I don't call that having been a factor that has any sort of cogent weight in this situation. The fact that the court read in your sentencing memo that it can't use those factors, well, we wouldn't be here. You wouldn't have conceded one and two if the court, one way or the other, articulated the factors that you told the court that it couldn't consider. So why should that lead us to believe that the court wouldn't also continue to stumble and actually rely on it in a way that was significant in imposing the sentence? Well, I think here the district court mentioned the prohibitive factor in explaining why it was denying him entry into the Rio program, not specifically in setting the amount of the sentence itself. Well, let's back up. My question is, what weight as a matter of law do we give to the fact that you had given the court a sentencing memorandum that said, don't do X, Y, and Z, when the minute the court walks into the courtroom, it does X, Y, and Z, at least in terms of uttering it. I mean, what weight does that memo have then when we are, you have conceded it was clear or obvious error. So the court obviously blew by the memo, at least far enough, to utter the wrong word. So, I mean, what does the memo get us? It probably doesn't get me very much, to tell you the truth. The district court must have forgotten about it. I don't think the district court would intentionally just blow by it, and I don't think that's what you were saying. No, I'm not implying that. District courts are very busy and probably just forgot. And, you know, you keep saying that the court only discussed these factors that might be seen as retribution factors at 78 and 79, but I'm going through where I went through and found things. And I see it on page 63, page 80, page 81. You may have a more narrow definition of what goes to retribution than I do, but when the court is talking about the appalling track record and the history with the sheriffs and law enforcement, I think it says law enforcement, that sounds to me like retribution. As the chief points out, it could also be other permissible factors, but it falls under retribution, too. I think that's a lack of clarity on my part here today. What I meant when I said she only – may I answer your question, Your Honor? Yes, of course. Is that she only specifically mentions the prohibited factor itself once. She only says retribution once. She only says to make sure that there is promotion of respect for the law once. Now, I agree that some of those other factors could also be relevant. The other facts and considerations she raises could be relevant both to retribution and to the proper factors. Jump ball, in other words. That's right, Your Honor. I think so. Thank you. Thank you very much, Your Honor. Thank you, counsel. Thank you. And I just wanted to point out exactly what Judge McHugh pointed out in Appendix 63. The probation officer states to the court, if you allow him into the program, he will be accepted. And then the court goes on to say, well, I'm not very inclined to allow you to do this. You have a really marked history and blatant disrespect for not only law enforcement but for probation and the rules of this court. So the district court doesn't just say retribution in passing. It's actually reflected in the record here in Page 63, just as Judge McHugh pointed out. Well, the whole point of your third argument of surprise is that there is a distinction between this whole conversation about the Rio program and sentencing. So that distinction holds true here, too, when the court is talking about these things in connection with whether it's going to give you the Rio program and then shifts into sentencing. So why doesn't that same line of demarcation apply that you were alleging caused the need for notice? Here, these comments you're talking about now, they were when you got the Rio program or not got the Rio program. Correct. And so what the third argument says is it's about, first, surprises. We should give counsel and the defendants time to prepare for an upward variance. Since there's a substantial likelihood that an upward variance is going to put someone in prison for a very long time, then counsel should get the opportunity to address those things. And I think my point was implicit in that argument was the notion that there was a distinction with the difference between this earlier conversation about the Rio program and the conversation when the court turned its eye to sentencing him and applying the upward variance. If that distinction is real, then that distinction also applies to this earlier discussion on page 60 of stuff where the court was not focused on sentencing. It was focused on whether it gave him the Rio program or not. Right, right. And we can see that the third argument is not the strongest argument. We mostly focus on our first argument, the plainer. I see my time is up. Can I wrap up? Yes, of course you can wrap up. Thank you so much. And as Judge Baldock pointed out, it's better to know on remand than to guess on appeal. And so we ask that the court… I try not to guess on appeal, but go ahead. That's a quote, that's a quote. And so we ask that the court remand, vacate the sentence and remand for resentencing. Thank you, Your Honor. Thank you, counsel. Thank you for your argument.